**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Jacksonville Division**

MOHAMED ALSEREIDI,                     Case No.: 3:26-cv-1941

       *Plaintiff,*

vs.

JP MORGAN CHASE BANK, N.A.;
and, WELLS FARGO BANK, N.A.

       *Defendants.*
_____/

## INTRODUCTION

1. The stated purpose of the Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq.* ("EFTA"), is to "provide a basic framework establishing the rights, liability, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b). EFTA's "primary objective…is the provision of individual consumer rights." *Id.* The consumer protection measures contemplated by EFTA are aimed at promoting disclosure, preventing fraud, and allocating liability.

2. Plaintiff MOHAMED ALSEREIDI ("Plaintiff"), by and through his counsel, brings this action against JPMORGAN CHASE BANK, N.A. ("Chase") and WELLS FARGO BANK, N.A. ("Wells Fargo") (collectively, "Defendants"), arising out of a series of unauthorized electronic fund transfers from Plaintiff's consumer deposit accounts and Defendants' subsequent mishandling of Plaintiff's disputes—including their failure to provide provisional credit, their inadequate and

unreasonable investigations, and their improper imposition of liability on Plaintiff for transfers he did not make or authorize (collectively, this and the following paragraphs are referred to as the "Complaint").

3. Defendants' conduct violates the EFTA and its implementing Regulation E, 12 C.F.R. Part 1005.

4. Plaintiff makes these allegations on information and belief, except those allegations that pertain to Plaintiff or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of each statute cited in its entirety. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), because this action arises out of Defendants' violations of the EFTA, 15 U.S.C. § 1693 *et seq.* Jurisdiction is further conferred by 15 U.S.C. § 1693m(g), which provides that an action under the EFTA may be brought in any United States district court.

7. This Court has personal jurisdiction over Defendants because, at all relevant times, each Defendant transacted business within the State of Florida and within this District, maintained branches and provided banking services to consumers

throughout Florida, and purposefully availed itself of the laws and markets of Florida. The consumer deposit accounts at issue were held by Plaintiff, a Florida resident, and were serviced and accessed in Florida.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because: (i) each Defendant conducts business in this District; and (ii) a substantial part of the events and omissions giving rise to Plaintiff's claims, including the unauthorized transfers from Plaintiff's accounts and Defendants' mishandling and denials of Plaintiff's disputes, occurred in this District. Assignment to the Jacksonville Division is proper because Plaintiff resides in Duval County, Florida, where a substantial part of the events giving rise to this action occurred.

## PARTIES

9. Plaintiff MOHAMED ALSEREIDI is a natural person who resides in Jacksonville, Duval County, Florida. Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1693a(6) and a "person" within the meaning of Regulation E, 12 C.F.R. § 1005.2(j).

10. Defendant JPMORGAN CHASE BANK, N.A. is, upon information and belief, a national banking association that markets, provides, and services consumer deposit accounts and electronic fund transfer services to consumers nationwide, including in this District, and that issued and holds Plaintiff's Chase checking, savings, and debit-card accounts described herein.

11. Defendant WELLS FARGO BANK, N.A. is, upon information and belief, a national banking association that markets, provides, and services consumer deposit accounts and electronic fund transfer services to consumers nationwide, including in this District, and that issued and holds Plaintiff's Wells Fargo checking account described herein.

12. Each of Chase and Wells Fargo is a "person" and a "financial institution" within the meaning of 15 U.S.C. § 1693a and Regulation E, 12 C.F.R. § 1005.2(i), because each directly or indirectly holds a consumer account belonging to Plaintiff and/or issues an access device and has agreed with Plaintiff to provide electronic fund transfer services.

13. Unless otherwise indicated, the use of the names Chase and Wells Fargo in this Complaint includes their respective agents, employees, officers, members, directors, successors, assigns, principals, representatives, and insurers.

## FACTUAL ALLEGATIONS

14. Plaintiff incorporates all preceding and subsequent paragraphs as though alleged in full in this section.

15. At all relevant times, Plaintiff held a Chase Private Client Checking account ending in 1986, together with a linked Chase Private Client Savings account ending in 6099 and an associated debit card ending in 3543 (collectively, the "Chase Account"), and a Wells Fargo Everyday Checking account ending in 6932 (the "Wells Fargo Account").

16. Plaintiff used the Chase Account primarily as a savings vehicle.

17. Plaintiff used the Wells Fargo Account for his day-to-day spending.

18. Between on or about March 5, 2026 and April 20, 2026, a series of forty-six (46) fragmented Zelle transfers, each in an amount between $1,000.00 and $7,500.00, moved $130,200.00 from Plaintiff's Chase checking account to Plaintiff's Wells Fargo Account.  Plaintiff did not make or authorize these transfers.

19. Each of the unauthorized Zelle transfers was preceded and funded by a corresponding online transfer from Plaintiff's Chase savings account into his Chase checking account that Plaintiff did not initiate or authorize.  Over the course of the scheme, Plaintiff's Chase savings balance was drained from $261,521.90 to $0.92.

20. The funds arriving in the Wells Fargo Account were immediately depleted by a parallel series of unauthorized, high-velocity debit-card transactions for "TikTok coin" and related in-app purchases, totaling $93,064.42.  Plaintiff did not make or authorize these purchases.

21. In addition, between on or about April 12, 2026 and April 19, 2026, ninety-one (91) unauthorized card transactions totaling $29,904.84 were charged to debit cards linked to Plaintiff's Chase checking account: (i) twenty-nine (29) charges to "Tiktok Tiktok.Com" on the card ending in 3543, made April 12 through April 14, 2026, totaling $7,243.51; (ii) twenty-six (26) charges to "Tiktok Tiktok.Com" on the card ending in 6807, made April 16 and April 17, 2026, totaling $8,042.94; (iii) two (2) charges to "GoogleTiktok Videos," made April 18, 2026, totaling $161.00;

and (iv) thirty-four (34) charges to "APPLE.COM/BILL" on the card ending in 3543—twenty-seven (27) of them in the amount of $449.99 each—made April 15 through April 19, 2026 and posting almost entirely on a single day, April 20, 2026, totaling $14,457.39.

22. Plaintiff did not make or authorize any of the transactions described above, never purchased "TikTok coins," and never consented to anyone else making these transactions. Plaintiff received no benefit from the transactions: the funds merely passed through his Wells Fargo Account before being consumed by purchases he did not make, on an Apple ID that Apple itself subsequently disabled for suspicious activity.

23. The unauthorized transactions are facially implausible and grossly inconsistent with Plaintiff's prior account activity. There is no rational reason for an account holder to move his own money in dozens of fragmented transfers over six weeks rather than in a single transfer. The structure of the activity, dozens of transfers, each below likely alert thresholds, immediately swept into online gaming purchases, is a classic fraud pattern.

24. Plaintiff discovered the unauthorized activity on or about April 17–18, 2026, and reported it to both Defendants within one to two days; Chase recorded an inquiry date of April 19, 2026 for both of Plaintiff's claims.

25. Plaintiff thereby notified Defendants well within sixty days of transmittal of the first periodic statement reflecting the disputed transfers.

26. Chase assigned Claim No. 465175836690001 to the disputed Zelle transfers; Chase's claim schedule listed forty (40) transactions made between March 16 and April 17, 2026, totaling $117,200.00.    Chase assigned Claim No. 835181243270001 to the unauthorized charges on the Chase debit card.

27. Chase verbally denied the Zelle claim as early as April 22, 2026, approximately three business days after receiving a claim involving forty (40) transactions and $117,200.00, and issued a written denial on April 29, 2026.

28. Wells Fargo assigned Claim No. 314981244 to the incoming Zelle credits, totaling $111,700.00, and Claim No. 10418260608 to the outgoing debit transactions, totaling $93,064.42.

29. On or about April 27, 2026, Wells Fargo "resolved" the incoming-credit claim without adjustment and, by letter dated May 1, 2026, denied the outgoing-debit claim.

30. Plaintiff filed complaints with the Consumer Financial Protection Bureau against Chase (Complaint No. 260423-31739635, filed April 23, 2026) and Wells Fargo (Complaint No. 260501-32119312, filed May 1, 2026), and with the Office of the Comptroller of the Currency (Case No. CS0437416, opened May 26, 2026, and still pending).

31. In its May 5, 2026 response to the CFPB, Chase maintained its denial.    Chase directed Plaintiff to "resolve this matter outside of Chase."

32. In its May 13, 2026 response, Wells Fargo reiterated its denials and closed its file even though Plaintiff's formal request for the documentation relied upon in Wells Fargo's investigation, made pursuant to 12 C.F.R. § 1005.11(d)(1), remained outstanding.

33. Apple, with full visibility into the disputed purchase activity, refunded twenty-eight (28) of the TikTok coin purchases, totaling approximately $11,907.44, which posted to the Chase Account on or about April 27, 2026 as merchant returns, and disabled the associated Apple ID for suspicious activity.

34. Chase itself treated the disputed Apple charges as unauthorized: on April 21 and April 24, 2026, Chase posted claim-reversal credits totaling $14,007.40 for the APPLE.COM/BILL charges—based on the same device records it invoked to deny the Zelle claim.  On May 14, 2026, Chase sent Plaintiff letters removing credits of $11,457.45 and $449.99 as duplicative of the merchant refunds and warning that Chase "may ask you to repay the credit(s)."

35. Chase's removal of those credits left Plaintiff with a negative balance at Chase of $11,938.61 as of June 30, 2026, on which fees continue to accrue, notwithstanding that the underlying transactions remain disputed as unauthorized.

36. Under the EFTA, the burden of establishing that an electronic fund transfer was authorized rests on the financial institution, not the consumer.  15 U.S.C. § 1693g(b).  Defendants did not and cannot meet that burden.

37. Defendants failed to conduct reasonable and timely investigations and knowingly denied Plaintiff's claims without adequate justification.  Defendants should have determined from their own records - including Plaintiff's prompt reporting, the facially implausible structure of the transactions, the wholesale depletion of a quarter-million-dollar savings balance, Apple's merchant refunds and disabling of the Apple ID, and Chase's own partial reversals - that the transactions at issue were unauthorized.

38. Defendants did not have a reasonable basis for believing that Plaintiff's accounts were not in error, and knowingly and willfully concluded that the accounts were not in error when such conclusions could not reasonably have been drawn from the evidence available to them.

39. Throughout Defendants' investigations, which took longer than ten business days, neither Defendant provided provisional credit to Plaintiff.

40. Because the unauthorized transfers did not involve a lost or stolen access device and Plaintiff notified Defendants within sixty days of transmittal of the periodic statements reflecting the transfers, Plaintiff bears no liability for the unauthorized transfers under 15 U.S.C. § 1693g and 12 C.F.R. § 1005.6(b)(3).  In any event, Plaintiff's liability could not exceed the $50.00 or $500.00 statutory tiers—not the more than $111,895.65 in net unrecovered unauthorized transactions for which Defendants have held him responsible.

41. The transactions at issue were "unauthorized electronic fund transfers" as defined by 15 U.S.C. § 1693a(12) and 12 C.F.R. § 1005.2(m), and concern an "account" and "electronic fund transfer" via an "access device" as those terms are defined by 15 U.S.C. § 1693a and 12 C.F.R. § 1005.2.

42. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered actual damages, including the loss of use of more than $111,000.00 in funds (net of approximately $11,907.44 in merchant refunds), out-of-pocket expenses, substantial time and effort spent disputing the unauthorized transfers, and emotional distress. Plaintiff was required to bring this action to finally resolve his disputes.

## FIRST CAUSE OF ACTION

### Violation of the Electronic Fund Transfer Act

### (15 U.S.C. § 1693 *et seq.*)

### [Against All Defendants]

43. Plaintiff incorporates all preceding and subsequent paragraphs as though fully set forth herein.

44. Plaintiff submitted timely disputes regarding unauthorized electronic fund transfers from his accounts at each Defendant.

45. Defendants failed to provisionally recredit Plaintiff's accounts within ten business days as required by 15 U.S.C. § 1693f(c) and 12 C.F.R. § 1005.11(c)(2).

46. Defendants failed to conduct reasonable investigations and wrongfully denied Plaintiff's claims, in violation of 15 U.S.C. § 1693f, including by improperly placing the burden of proving fraud on Plaintiff.

47. Wells Fargo further failed to promptly provide Plaintiff with copies of the documents it relied upon in determining that no error occurred, despite Plaintiff's request, in violation of 12 C.F.R. § 1005.11(d)(1).

48. Defendants improperly held Plaintiff liable for the unauthorized transfers in excess of the statutory limits, in violation of 15 U.S.C. § 1693g and 12 C.F.R. § 1005.6.

49. The foregoing acts and omissions constitute numerous and multiple violations of the EFTA.

50. As a direct and proximate result of Defendants' violations of the EFTA, Plaintiff is entitled to actual damages, inclusive of emotional damages, pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages pursuant to 15 U.S.C. § 1693m(a)(2)(A); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3). Because Defendants acted knowingly and willfully, Plaintiff is further entitled to treble damages under 15 U.S.C. § 1693f(e).

## SECOND CAUSE OF ACTION

### Conversion

### [Against All Defendants]

51. Plaintiff incorporates all preceding and subsequent paragraphs as though fully set forth herein.

52. At all relevant times, Plaintiff owned, and was entitled to the immediate possession and use of, the specific and identifiable funds on deposit in his Chase and Wells Fargo accounts, including the approximately $261,521.90 held in his Chase savings account.

53. Through the unauthorized transactions described above, those funds were taken from Plaintiff's accounts without his authorization or consent.  Plaintiff repeatedly demanded that Defendants return his funds - through his disputes and re-opened claims, his complaints to the Consumer Financial Protection Bureau and the Office of the Comptroller of the Currency, and his other communications with Defendants - but Defendants refused.

54. By refusing to restore the stolen funds despite Plaintiff's repeated demands, wrongfully holding Plaintiff responsible for transactions he did not make or authorize, and retaining the benefit of those funds, Defendants have wrongfully exerted dominion and control over Plaintiff's property inconsistent with, and in deprivation of, his ownership and possessory rights.

55. Defendants' conduct was willful, wanton, and in conscious disregard of Plaintiff's rights.

56. As a direct and proximate result of Defendants' conversion, Plaintiff has been deprived of his funds and damaged in an amount of no less than $111,895.65, together with interest, in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants, and each of them, as follows:

- An award of actual damages, inclusive of emotional damages, pursuant to 15 U.S.C. § 1693m(a)(1), including the unauthorized transfers for which Defendants wrongfully held Plaintiff liable;

- An award of treble damages pursuant to 15 U.S.C. § 1693f(e);

- An award of statutory damages of no less than $100 nor greater than $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A);

- An award of costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. § 1693m(a)(3);

- An award of compensatory damages on Plaintiff's conversion claim, in an amount of no less than $111,895.65, to be proven at trial;

- An award of punitive damages on Plaintiff's conversion claim, as permitted by law;

- Pre-judgment and post-judgment interest as permitted by law; and

- Any and all other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

57. Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38, Plaintiff is entitled to, and hereby demands, a trial by jury on all claims and issues so triable.

Dated: July 30, 2026.                    Respectfully Submitted,


**DEBT SHIELD LAW**

***/s/ Kevin Rajabalee, Esq.***
Fla. Bar. No. 119948
3440 Hollywood Blvd., Suite 415
Hollywood, FL 33021
Main: 754-800-5299
Direct: 954-667-3096
Fax: 305-503-9457
kevin@debtshieldlaw,com
dayami@debtshieldlaw.com
service@debtshieldlaw.com


**LOKER LAW, APC**

By:  /s/ Andrei Armas, Esq.

(Pro hac vice, pending approval)

Matthew M. Loker, Esq.
(Ca. Bar. No. 279939)
matt.Loker@Loker.Law
Telephone: (805) 994-0177
Andrei Armas
(Ca. Bar No. 299703)
andrei.armas@loker.law
Telephone: 213-587-6201`1
132 Bridge Street
Arroyo Grande, CA 93420